**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 14-cv-01411-REB

CHARLES W. BRANDON,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING COMMISSIONER**

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[1] filed May 19, 2014, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

    Plaintiff alleges that he is disabled as a result of a traumatic brain injury suffered in a December 2008 car accident. After his application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on September 18, 2012. At the time of this hearing, plaintiff was 35 years old. He has a ninth grade education and past relevant work experience as a

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

heavy equipment operator. He has not engaged in substantial gainful activity since December 6, 2008, his alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits. Although the evidence established plaintiff suffered from severe cognitive impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Plaintiff's alleged physical impairments were found to be not severe.[2] The ALJ found plaintiff had the residual functional capacity to perform a range of simple, unskilled, light work with certain environmental limitations and which required no more than superficial contact with supervisors and coworkers. Although this finding precluded plaintiff's past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the national and local economies that he could perform. He therefore found plaintiff not disabled at step 5 of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518,

---

[2] Plaintiff does not challenge this aspect of the ALJ's disability decision in this appeal.

1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four

steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

In a single allegation of error, plaintiff complains that the ALJ improperly failed to

afford more substantial weight to the opinion of his treating psychiatrist, Dr. Daniel Slater. The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion may not be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. *Watkins*, 350 F.3d at 1301. Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Because I conclude that the ALJ articulated specific, legitimate reasons tied to the evidence of record for the reduced weight he assigned to Dr. Slater's opinion, however, I affirm.

Among other serious injuries, plaintiff suffered a traumatic brain injury ("TBI") (more particularly, diffuse axonal injury and subdural hematoma) as a result of a December 2008 motor vehicle accident in which he was thrown 50 to 150 feet from the car. (*See* Tr. 282, 371-372, 616.) He "had an extremely prolonged and complicated hospital course" and spent more than two months in the hospital. (*See* Tr. 330-332.) Shortly after discharge, he was evaluated for complaints of memory deficits and irritability and referred to Dr. Slater, a TBI specialist. (Tr. 616-617.) The record reveals that plaintiff saw Dr. Slater four times between May 2009 and April 2010 (Tr. 620-629)[3]

---

[3] Plaintiff probably saw Dr. Slater at least one additional time prior to May 2009. (*See* Tr. 620 (note from May 2009 visit noting that "plaintiff returns to the clinic today for *followup* care") (emphasis added.)

and then not again for more than two years (Tr. 774-775).

Nevertheless, in February 2011, having not seen plaintiff in some ten months, Dr. Slater authored a letter suggesting that plaintiff "continues to struggle with issues including concentration, memory, and executive function." He pointed out that plaintiff's post-trauma amnesia "is a very serious negative prognosticator for functional return" to work and opined that plaintiff's "chances for meaningful and competitive employment are unfortunately poor." (Tr. 749.) That August, Dr. Slater again reiterated that plaintiff's "prognosis for competitive meaningful employment is very poor given his cognitive impairment resultant from his brain injury," and suggested that plaintiff "is at complete and total disability level." (Tr. 773.) Finally, in a post-hearing letter to plaintiff's attorney, Dr. Slater outlined in more detail the reasons for his opinions. He stated that plaintiff suffered from disinhibition and was able to process only "very simple instructions." He further stated that plaintiff suffered from post-injury fatigue and headaches which would impact his ability to keep a consistent work schedule. Dr. Slater suggested that "at least half of the days of work would be missed and possibly more." He thus reiterated that plaintiff had "a permanent and full disability." (Tr. 797-799.)

The ALJ gave Dr. Slater's opinion little weight, principally on the ground that his statements were unsupported by his own treatment notes. (Tr. 18-19.)[4] This conclusion finds considerable support in the record. At one of plaintiff's early visits, Dr.

---

[4] The ALJ also appropriately noted that Dr. Slater's bare, wholly conclusory statement that plaintiff was "disabled" went to an issue reserved to the Commissioner and thus was entitled to no weight. (Tr. 19.) *See* 20 C.F.R. § 404.1527(d)(1).

Slater noted him to be "a little more articulate than his last visit with a fairly good insight into his emotions as well as his impairments."  Dr. Slater prescribed medications and suggested plaintiff was "appropriate for at least a driving evaluation" and "suspect[ed] that he will be safe on the road," and also stated that he was "hopeful" that plaintiff could work again, although he "did not want to make any predictions at this early time."  (Tr. 620.)  At plaintiff's next visit in October 2009, Dr. Slater noted that plaintiff was "markedly different than his initial presentation," "smiling" and "joking" with "bright affect."  Plaintiff reported that he was sleeping well, and Dr. Slater found him to be "much more appropriate and much less focused on his inabilities.  He seems very goal-directed and actually with some fair insight as to problems he still has with his memory."  Discussing one of plaintiff's prescription medications, Dr. Slater suggested continuing that medication at least until plaintiff was "stable in terms of employment and other issues."  (Tr. 623.)

Plaintiff did not see Dr. Slater again until March 2010, when he reported having stopped all medications after being prescribed Vicodin for a broken clavicle and being "concern[ed] that he would fail a drug test."  Plaintiff reported increased problems with memory, and Dr. Slater restarted his medications, noting the good results he had experienced with medications in the past.  Dr. Slater also noted that plaintiff admitted to drinking "quite heavily," about a pint of whiskey a night.  (Tr. 626-627.)  The following month, plaintiff was "doing much better" and was working for his uncle."  Dr. Slater reported plaintiff's "mood is much better, and he thinks his attention is much improved on medications started at his last visit."  He also had reduced his alcohol consumption substantially.  (Tr. 629.)

7

Plaintiff did not contact Dr. Slater again until June 2012, more than two years later. At that time, plaintiff reported he had stopped working because his memory problems were incompatible with work as a mechanic, and he was drinking heavily again. Plaintiff apparently also had stopped his medications again, although he had some expired medications that he had resumed taking more recently. (Tr. 774-775.) When plaintiff returned to Dr. Slater the following month, he reported that, with the help of medication, he was "doing well," and said that he experienced "more positive thinking, [was] consuming less alcohol, and . . . calms more readily." (Tr. 783.)

This evidence more than adequately supports the ALJ's decision to afford Dr. Slater's opinion little weight. Indeed, Dr. Slater's own treatment records strongly support a conclusion that plaintiff's cognitive deficits were managed adequately with medication and a reduction in his alcohol use. *See Pacheco v. Sullivan*, 931 F.2d 695, 698 (10th Cir. 1991) (impairment that can be controlled with treatment is not disabling).[5] Where, as here, the ALJ has given specific, legitimate reasons tied to the evidence of record for the weight he assigns to a treating source opinion, the disability determination is not subject to reversal simply because he assigns little weight that opinion.

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

---

[5] . This same fact was noted by the consulting psychologist who examined plaintiff. (*See* Tr. 755 ("The medications are helping him with his memory, physical pain, and sleep without nightmares."); Tr. 756 ("The medications are helping him, especially the Effexor and trazodone, with his memory and sleeping.").)

Dated September 14, 2015, at Denver, Colorado.

**BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge